May it please the Court, I'm Karen Landau and I represent Dr. Mark Little. There's two issues I'd like to discuss today, hopefully I'll get to both of them, but the first one is the District Court's refusal to give any instruction on diminished mental capacity. In this case, Dr. Little presented a defense that he suffered from brain injury, which affected his ability to remember and also affected his ability to understand. Understand that he did not remember anything, and that diminished capacity was the cause of the false billings in this case, rather than an intent to defraud. The District Court refused to give any instruction on diminished capacity, although several different ones were requested. Instead, the Court gave a specific intent instruction only. The Court did not even give a good faith instruction, although that was requested as well. All of which you were able to argue. He was able to argue it, Your Honor, but the Court did give the standard instruction that the arguments of counsel are not evidence and are not to be considered as such. You're correct, Your Honor. He requested the standard, the Ninth Circuit model instruction, which covers both diminished capacity and intoxication, and informs the jury that it may consider that on intent. But there was nothing, the problem is two-fold here. There was nothing to tell the jury how to treat this evidence of diminished mental capacity. And this isn't a case where there was no defense. There was obviously a defense. And, well, it's not a defense like alibi or whatever. You just wanted to single out a certain part of the evidence and tell the jury that they could consider it. Well, but, Your Honor, it's not, it is actually a lot closer to alibi than it is to, say, the good faith line of cases. Because, well, for one thing, alibi like diminished capacity are both, well, alibi is a very simple matter. The jury can understand the concept that, well, he wasn't there, he didn't do it. Yet this Court requires a specific alibi instruction to be given on request and, in fact, holds that it's reversible error per se not to. Well, in this case, we had diminished capacity, which is not a matter of What you asked for was an instruction that said, you may consider evidence of defendant's brain injury and abnormal mental condition. On intent. The latter phrase got struck. Okay, so A word of instruction. You asked for an instruction to consider the defendant's brain injury. Yes. On intent. I understand. And there was a whole parade of instructions on intent. So why was it even remotely necessary? Your Honor, it's necessary because we don't know, well, first of all, we don't know what happened in the jury room. But the jury is always instructed on intent, specific intent. But we don't, the juries don't necessarily know how to deal with evidence of diminished capacity or what it means. But it's not diminished capacity. It's not what you asked for. You modeled the instruction on a diminished capacity instruction, but it wasn't what was asked for. Well, it was the I mean, it's sort of in the, it has a family resemblance. Your Honor, actually, it was the diminished capacity instruction that, I mean, I understand your point, but it is the diminished capacity instruction in the Ninth Circuit. And, in fact, they did ask for more specific instructions, which I am not arguing that the Court erred in refusing to give. How do you distinguish the U.S. v. Seabian, the D.C. case? Your Honor, the one thing, the Seabian case, well, obviously, it's out of circuit authority. Right. But I did discuss that in my reply brief. I believe the Seabian case is from the Eleventh Circuit. Is that correct? And the Eleventh Circuit has a different standard of review from the Ninth Circuit when evaluating the failure to give a defense theory instruction. But the diminished capacity issue is included within the instruction you got, is it not? It's just a gloss on it. Well, no, because, actually, there was no mention of diminished capacity. There was no mention of brain injury. There was no mention of the whole defense theory, which was that he had this brain injury and, you know, I mean, I won't belabor it. But you were able to put on at least two experts, and indeed three, I think, that dealt with this issue. And the instruction that was given to the jury included the overall mental intent, the gloss I referred to earlier. The jury, if they were listening to your experts, presumably would have been able to understand that and to apply it in the way that you wanted if they believed it. Isn't that correct? Perhaps, perhaps not, because the instructions, again, the instructions did not at all deal with diminished mental capacity or tell the jury where this evidence could be considered. Now, we hold, the Ninth Circuit holds that you have to tell the jury how to consider alibi evidence. But alibi is different. That has separate elements to it, separately pled. That's a, do you have any authority that suggests that in the Ninth Circuit, diminished capacity is treated like an alibi? Well, actually, yes, Your Honor, for, well, not comparing the two directly, but I would refer you to both U.S. v. Washington, which is cited in my briefs, and also U.S. v. Martinez-Martinez, which is a case where this Court specifically approved of the district court who gave the instruction on intoxication and diminished capacity in a situation where, well, that was not a case involving, and actually there was expert testimony in Martinez as well. I can say, and Martinez, I have a quote here, it is not reversible error to reject the defendant's proposed instruction on hysteria of the case if other instructions adequately cover the defense theory. Aren't you kind of shooting yourself in the foot with that one? No, Your Honor, because in that case, they did give a specific defense instruction. And, in fact, they gave the Ninth Circuit, the judge gave the Ninth Circuit model instruction, and that is not what happened here. Martinez does not hold that, I mean, what the government is proposing is that, is the same rule that we have for good faith instructions, which is that if you have, if the defense asks for a good faith instruction, he's entitled to it, but as long as the court instructs on specific intent, we won't reverse. That's what the Ninth Circuit holds. The government is suggesting that you expand that to the diminished capacity context, and Martinez does not hold that. The Martinez-Martinez case specifically says, in this case, here the judge did exactly what was right. That's exactly what didn't happen here. I'd like to devote a couple of minutes to the next issue, and then I'll try to save a minute for rebuttal. Oh, and I do have one additional citation that I will submit it in a 28-J letter. The, I would refer this Court to Pirtle v. Morgan. It's a habeas case in which this Court held. What is it? I'm sorry. Pirtle v. Morgan. And, of course, it's not identical because it doesn't involve the Federal rules. It involves the habeas context. But, again, the Court held that the failure to give a diminished capacity instruction was reversible error notwithstanding the fact an intoxication instruction was given. I will submit a 28-J. I apologize. That's a Ninth Circuit case? Yes, it's a Ninth Circuit case. It's at 313 Fed Third. When was it decided?  Why isn't it in your briefs or your 28-J letter or something like that? It should have been, Your Honor, and I apologize. And I will submit a 28-J letter. All right. The, I'll just devote a minute to this. The second problem here is that the district judge improperly limited the expert testimony, told defense counsel he couldn't get into specifics, and did not allow the ---- What foundation would there have been, a Dahlberg foundation would there have been, for him to get into specifics that would have been reliable? Your Honor, I, you know, the truth is I can't answer that question because he wasn't allowed to develop it. Wasn't that the end of it then? No, because that objection wasn't even raised below. Oh, but that's the district court's reasoning. But the district court, no, it wasn't the district court's reasoning. The district court just said no specifics. He, the district court preempted a lot of these. No, the district court went through Dahlberg and said it wouldn't be reliable. You can talk, you can testify to generalities, and you're going to have the wife and the office manager who will come in at the other end and testify to the specifics. But the, Your Honor, the district court read the reports. He didn't, he never, he didn't really rely on a foundation. He just started saying, he came out and he said no specifics, you can't go there. And, you know, perhaps defense counsel should have pushed harder. You're talking about Dr. Wu? Yes, Dr. Wu. You know, 704B is going to prohibit what I think you're looking for, is it not? No, Your Honor. He was, of course he couldn't testify whether the defendant had intent or not. We concede that. But he could have testified as to general, he could have testified, for example, that whether the behavior or the type of behavior in this case was consistent with this type of brain injury. That was what was precluded, and that was what, and that would not have. That goes to intent, does it not? The jury could have inferred from that that a person with that injury would have been incapable of entertaining that level of intent. They could have, well, first of all, perhaps the jury could have drawn that inference. But that's forbidden by 704B. Right. Well, no, it's, let me say this. The expert is not allowed to testify directly on intent or to testify in a way such that the only inference would be that. The only inference? But not, but that's not correct. The jury, if Dr. Wu had provided this testimony, the jury would have still been able to decide whether in this case he, in fact, intended or not. And that's what is, that's all that's allowed, I mean, that is allowable under 704B. Certainly, again, we don't, we are not arguing that Dr. Wu could have testified, oh, he didn't have the intent, or I don't think he had the intent. But he could have testified about the specifics of the case he could have testified about in a hypothetical format, for example. And the judge forbade them from using any hypotheticals. But this is exactly the kinds of things that you see with psychiatric testimony all the time, is you will have a situation where the judge, well, for example, in the case of schizophrenia, you might have a psychiatrist get on and say, I've examined the defendant, and I find that he's a schizophrenic. And the delusions, or he might say, for example, that the delusions, the paranoid delusions in this case are consistent with paranoid schizophrenia. Okay. Now, you could say that that would certainly go to negate intent, and the jury could infer that if they believe it. But that testimony is absolutely permitted. I see I've exhausted my time, so thank you. Thank you, Ms. Landau. Ms. Joseph. Good morning, Your Honors. May it please the Court. My name is Jeanne Joseph, and I'm representing the United States in this matter. The defendant raised three issues on his appeal, and I'll just try to address those in turn. I can get to them. The first one being whether the district court erred in not providing a jury instruction on diminished capacity separate and apart from the specific intent instruction. Obviously, we know the standards to look at the instructions as a whole and just determine if they fairly and adequately covered the defendant's defense theory wasn't reasonably understandable to the jury. And I think that it was here. And the government did cite three cases. They are out of district from the 8th, 11th, and 10th circuits, but they're really directly on point. And I think they're very helpful in this context. And I know the judges have noted some of the language in there, but basically the thought was, or the holding was, is that so long as you give a specific intent instruction, it may be preferable to give diminished capacity, but it's not error to not give a separate diminished capacity instruction. And that's because, again, it's a new approach to an old element, that's a quote, or it's a gloss on the specific intent issue. Moving to the cases in this circuit, I think this is definitely more analogous to the good faith defense cases cited by the government, the Shipsey, Fraga, Sarno, and Dease case. Again, because we're looking at something that's going toward an element of the offense, which is the intent element, as opposed to a separate affirmative defense that might require a separate instruction. Again, more analogous, we also cited Kaplan and Chen. Again, Chen, a bad memory defense, and the court held that it was sufficient to give an instruction regarding knowledge, because that would cover bad memory. I think the defendant's cases are distinguishable here. You raised some of these issues. They're dealing with affirmative defenses, like government authorization and entrapment, that require a separate instruction, because if a jury simply hears the elements of the offense and they believe the defendant was authorized by the government, they still have to convict unless they have a separate instruction saying all of the elements may be true, but if the government authorization is established, then we can acquit. Ms. Joseph, how do you deal with what appears to be an intra-circuit conflict between U.S. v. Zuniga and U.S. v. Girola? In Zuniga, the argument theoretically would be that if they were to instruct the jury on the defendant's theory of the case is reversible per se and not harmless error, whereas Girola seems to suggest that the harmless error standard should be applied. What's the government's position on that? Well, I think that as a case I know that was cited that, for instance, the Tenth Circuit has a different holding in the context of an alibi, but I think if we look at the reasoning of the Zuniga case, we can see that this case is more akin to good faith than an alibi, and I think an alibi is more akin to an affirmative defense, and that's because what the court was concerned about in Zuniga was basically confusion to the jury that once a defendant raises an alibi defense, does the burden of proof switch to the defendant to establish that defense, and that there was confusion, and in this way, by instructing specifically on alibi, the court can instruct the jury that, no, the burden of proof does not switch to the defendant. The defendant doesn't have to prove alibi. The burden of proof remains on the government to establish all of the elements of the offense. In this case, when we're talking about diminished capacity, the jury, it only goes to the intent element of the offense, which the jury has very clearly instructed the burden of proof is always on the government. So I don't think we have that same concern here, and I think the Zuniga case is distinguishable on that basis. And, again, when it comes down to harmless error, I think we have to look at was it confusing to the jury, and I think that I would submit that that simply wasn't the case, because, again, the closing arguments were the whole point of the defendant's closing argument was that because of the brain injury, Dr. Little was making mistakes and there was no intent to defraud. What's your position on your opposing counsel referred to Pirtle v. Morgan? Are you familiar with that case? I am not, Your Honors. And it wasn't cited in the briefs, and I'm sorry to say that I'm not. And it sounds like it's in a different context. It's in the habeas context. And, fortunately, I can't comment on that. But back to harmless error, I think, again, there was no confusion to the jury here. The whole force of the defendant's argument was that his brain injury caused mistakes in billing and it wasn't intentional. And, in turn, the government's entire closing argument was trying to show all the evidence that established that these weren't mistakes in billing. This was intentional misbilling. Again, he wasn't forgetting dates. He was billing for things that never were done. He made up false diagnosis codes. He fabricated records. He lied under oath at the California Medical Board proceeding. Again, all these things showing an intent to defraud. I'd like to touch upon the scope of the expert witness testimony issue. This is something that's reviewed for abuse of discretion. That's because the district court obviously has broad discretion to determine the admissibility of expert testimony in a trial. And there really were two issues here. There was the 704B issue. But secondarily, and I actually think more importantly, once I really started thinking about it further, is the issue about whether they were overreaching and going beyond the scope of their expertise. And I think that's the case here. And the district court, that is one of his issues. And he raised that. And if you look at the transcript, that's what the district court was saying. He said we can't make, you can't make that specific linkage. You can't testify that defendant can or cannot do X or Y, I believe was his language. Because that's an impossible link for you, that expert, to make. Because it takes a doctor out of what he does normally, and it overreaches. And he talked about the different scopes of what psychiatrists and psychologists could talk about. But the district court said you can establish that link, but you're just going to do it through the proper witnesses. You're going to have your experts testify about the testing they did, their diagnosis, and the characteristics of that disease that you've diagnosed the defendant with. And then you're going to have the proper witnesses, the wife, the office manager, testify about the defendant's actual behavior and practice, how his office was disorganized, how he would forget dates. And that way you actually, you make that linkage. But that's the proper way to do it. And I think that's what happened here, because when we look at Dr. Wu, who the foundation and his expertise, and there's a lot of testimony about that, he basically reads PET scans. And in reading those, he says he looks as to whether that cooperates a certain disease. And the diseases he mostly was looking at were Alzheimer's and Parkinson's and schizophrenia and depression. But he didn't establish any familiarity or expertise to be able to say, when I read this X-ray, someone's going to behave in this manner, and specifically regarding the medical billing. There's just no way that they could have laid that foundation for that expert witness. And it's the same basic argument, I would say, as to Dr. Borum. And, again, I would sort of analogize it maybe to a drug case where we're talking about drug lingo or we're talking about a distribution amount. The expert there is able to testify to those things because they've worked undercover, they've interacted with drug dealers, they've heard the words used, and they've done these drug deals and know what a distribution amount is. And I think in this case, I would submit that these doctors just didn't have the foundation to establish that you can have this injury, and I can read this on an X-ray, and that means you're going to act this way in practice on medical billing and submitting claims to Medicare and very specific things. The district court, actually, though, did not deal with his expertise, at least on the record. According to the, this is February 11, 2004, starting at line nine, counsel for the defense said, well, one thing I would like Dr. Wu to testify to is that I would like him to testify to the fact that he's read the indictment, he knows what the factual basis for the charges are, like the billing in China and whatever, or wherever, excuse me, and billing for services not rendered, and that in his opinion, that pattern of billing behavior is consistent with the brain injury that he believes. And then the court cut him off and said, no, he can't get specific, he can't get into this case. He can say generally that people have problems, for instance, with sorting or generally keeping track of general symptomology, but what he can't do is get into this case in terms of record keeping and then relate it back specifically to an opinion. So your conjecture about whether he was qualified in terms of the foundation, he may have thought that, but at least not in the record, as far as I can see. It really was based upon what I interpret to be a 704B issue. Is that your interpretation as well? I think there's both issues, and I think the district court raised both issues. I think they're both in the record. I think when we look at, I believe it's on, it's February 13th. I'm sorry. It's February 12th. When we look at pages 18 through 20 and 21, Judge Carter is also talking about, he does talk about specificity, and obviously it's a 704B issue, and I'm going to get to that very quickly next. Actually, your time is up. Oh, I'm sorry. So if you can just answer Judge Smith's question. So I think those pages in the record, he does talk about this lack of foundation. But, again, I also think that there is a 704B issue. Thank you. Okay. Thank you, counsel, both of you. The matter just argued to be submitted. And we'll hear next Smith's carry. Thank you.
judges: Rymer, Wardlaw, Smith